**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TYRONE ARTHUR, | : | |
| | : | Civil Action No. 09-0558 (JBS) |
|        Petitioner, | : | |
| | : | |
|        v. | : | **OPINION** |
| | : | |
| DONALD MEE, | : | |
| | : | |
|        Respondent. | : | |

**APPEARANCES:**

Tyrone Arthur, #428945
East Jersey State Prison
Lock Bag R
Rahway, NJ  07065
    Petitioner pro se

Robin A. Hamett, Assistant Prosecutor
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ  08102
    Counsel for Respondent

**SIMANDLE**, District Judge:

    Petitioner Tyrone Arthur, a prisoner currently confined at East Jersey State Prison in Rahway, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondent is Donald Mee.

    For the reasons stated herein, the Petition must be denied.

## I.   BACKGROUND

### A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> [The charges against defendant arose] from two
> separate incidents:  in the first, occurring on or
> about September 17, 2000, defendant punched his
> girlfriend during a fight, breaking several of her
> ribs; in the second, occurring on October 20, 2000
> during another fight, he bit her nose and eyes,
> breaking her nose and causing her eyes to swell shut,
> he repeatedly stabbed her in the arm with a penknife
> and, while attempting to stab her in the head, he cut
> her left ear - all the while threatening her with
> death.

State v. Arthur, 2008 WL 2466541 (N.J.Super. App.Div. June 20, 2008).

### B.   Procedural History

Following jury selection, and after his girlfriend-victim had testified against him in a pre-trial hearing, Petitioner openly pled guilty, without a sentence recommendation, to charges of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3a, and second-degree aggravated assault, N.J.S.A. 2C:12-1b(1).

At sentencing, the judge denied Petitioner's motion to retract his guilty plea and sentenced Petitioner to nineteen

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

years in custody, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.[2]  State v. Arthur, Ind. No. 01-04-1195 (N.J. Super. Law Div., Camden County, Jan. 25, 2002).  Petitioner's sentence pursuant to the No Early Release Act also included the mandatory three- and five-year periods of parole supervision, to be served concurrently following incarceration.  The Superior Court of New Jersey, Appellate Division, affirmed, State v. Arthur, No. A-4211-01T4 (N.J.Super. App. Div. March 10, 2004), and the Supreme Court of New Jersey denied certification, State v. Arthur, 180 N.J. 453 (2004).

    Petitioner timely filed a state petition for post-conviction relief, asserting that he had pled guilty only after having been offered a "twenty-four month program" by unidentified Camden County homicide detectives in return for his cooperation in connection with a murder case against Petitioner's cellmate; that he had not received the promised sentence despite his cooperation; and that trial counsel was ineffective in not obtaining that sentence.  Petitioner argued also that he had not been advised of the five-year period of parole supervision.  The PCR petition was denied without a hearing.  On appeal, the Appellate Division affirmed the denial of relief.  State v.

---

    [2] Petitioner was also given a consecutive four-year sentence for a parole violation arising from the commission of the crimes to which he had pled guilty.

Arthur, 2008 WL 2466541 (N.J.Super. App.Div. June 20, 2008).  The
Supreme Court of New Jersey denied certification.  State v.
Arthur, 196 N.J. 597 (Oct. 6, 2008).

This Petition, dated January 22, 2009, was received by the
Court on February 3, 2009.  Petitioner asserts as grounds for
relief:  (1) ineffective assistance of trial counsel, in that
counsel allegedly did not make him aware of the five-year period
of parole supervision that would follow his incarceration, and
(2) breach of a plea agreement, in that he was allegedly promised
a twenty-four month "program" in exchange for his cooperation
with respect to a murder prosecution pending against his
cellmate.  Respondent acknowledges that the claims are exhausted
and that this Petition is timely; Respondent argues that the
Petition is meritless.  Briefing is complete and this matter is
now ready for decision.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent
part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.

4

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

5

where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   Breach of Plea Agreement/Validity of Guilty Plea[3]

Petitioner argues that the government breached an alleged plea agreement to sentence him to a twenty-four month "program," in exchange for his cooperation with respect to a murder prosecution against his cellmate.

The Appellate Division rejected this claim on direct appeal.

> In his pro se supplemental brief, defendant claims that he was promised a twenty-four month drug treatment program in exchange for his pleas of guilty to attempted murder and second-degree aggravated assault. Prior to sentencing, defendant moved to vacate his plea, arguing at that time that he was not guilty of the crimes charged (the blood found on his hands and throughout the apartment consisting instead of jelly from six jelly doughnuts and of cranberry juice), that he was not told what he was signing when he signed the plea form, that he had been assured of a lighter sentence if he pled guilty, and that he was unaware of his maximum exposure at sentencing.  The motion was rejected by the trial judge who found it to be factually unsupported and found further that defendant's plea had been voluntary and both knowingly and intelligently given.

> We find no error in the court's denial of defendant's initial motion to vacate his plea.  State v. Kane, 335 N.J.Super. 391, 395-96 (App. Div. 2000). Our review of the record discloses that the court's procedure in taking defendant's plea fully conformed to the requirements of Rule 3:9-2, and that he did not err in finding the plea to have been voluntarily, knowingly, and intelligently given.  Locurto, supra,

---

[3] Because Petitioner conflates his claims of ineffective assistance of counsel with the underlying substantive claims of error in connection with his guilty plea, this Court will construe the Petition liberally and address any possible underlying substantive claims as well as the claims of ineffective assistance of trial counsel.

157 N.J. 470-71.  Defendant was represented by counsel
throughout the plea proceedings, he was fully informed
of the maximum sentence that could be imposed on the
two counts to which he pled, including its NERA
component, and defendant acknowledged that no promises
as to the length of his sentence were made.  Further,
defendant gave a full factual basis for both crimes.
He was informed of and waived his right to a trial by
jury, to remain silent, to the presumption of
innocence, and to the right of confrontation.  Finally,
defendant affirmed that he was satisfied with the
services of his trial attorney.  In the circumstances,
which provide no evidence of valid grounds for
retraction, we affirm the court's initial order denying
defendant's motion to vacate his plea as fully within
the courts discretion.  State v. Luckey, 366 N.J.Super.
79, 87-89 (App. Div. 2004); State v. Gonzalez, 254
N.J.Super. 300, 303 (App. Div. 1992).

        On appeal, defendant claims for the first time
that he was promised drug treatment instead of a prison
term in exchange for his agreement to cooperate in
obtaining incriminating statements from his cell mate
Kevin Cook.  He states that he did so and, after vainly
seeking assurances as to his sentence, he wrote to the
court seeking to retract his plea.  If such were the
case, some assertion of that fact would have appeared
in the record of defendant's retraction motion.  It
does not.  The motion instead was premised on the
grounds that we have previously set forth.  Under these
circumstances, we do not find defendant's present
allegations to be credible, and we reject his
arguments.

(Opinion of Superior Court of New Jersey, Appellate Division, at

12-14 (March 10, 2004).)

        A guilty plea "must, of course, be voluntary and knowing and

if it was induced by promises, the essence of those promises must

in some way be made known."  Santobello v. New York, 404 U.S.

257, 261-62 (1971).

        This phase of the process of criminal justice, and
        the adjudicative element inherent in accepting a plea

of guilty, must be attended by safeguards to insure the
defendant what is reasonably due in the circumstances.
Those circumstances will vary, but a constant factor is
that when a plea rests in any significant degree on a
promise or agreement of the prosecutor, so that it can
be said to be part of the inducement or consideration,
such promise must be fulfilled.

Santobello, 404 U.S. at 262.  Where there has been a breach of a
plea agreement, whether purposeful or inadvertent, that breach
must be remedied regardless of whether the defendant was
prejudiced thereby.  Dunn v. Colleran, 247 F.3d 450, 458 (3d Cir.
2001) (citing Santobello).  Where a federal court finds on habeas
review that a state prosecutor has breached a plea agreement, it
must refer the issue of remedy to the state court, to determine
whether the prisoner should be resentenced under the plea
agreement or given the opportunity to withdraw his plea.  Dunn v.
Colleran, 247 F.3d at 462.

Here, the state court found that there was no agreement to
sentence Petitioner to a twenty-four month program in exchange
for the guilty plea and, hence, that there was no breach of a
plea agreement.  Petitioner has presented no evidence to this
Court supporting the existence of such an agreement.
Accordingly, this Court finds that the state court decision was
based on a reasonable determination of the facts in light of the
evidence presented and the state court decision is not contrary
to, nor an unreasonable application of, clearly established
federal law.  Petitioner is not entitled to relief on this claim.

In addition, to the extent the Petition could be construed as encompassing a claim that Petitioner's guilty plea was not knowing and voluntary, because he was not informed of the periods of mandatory parole supervision, any such claim is meritless.

The Appellate Division rejected this claim when it was presented in the state petition for post-conviction relief.

Defendant also argues that he is entitled to post-conviction relief because he was not informed of the periods of parole applicable under NERA to his convictions for attempted murder and aggravated assault, or that if parole were violated, he could as a consequence serve a sentence longer than his base term. [State v. Freudenberger, 358 N.J.Super. 162, 168-70 (App.Div. 2003).]  Our review of the plea transcript confirms that no oral reference to parole occurred in a NERA context, and the State has conceded that the page of defendant's supplemental plea form that addressed mandatory parole under NERA and the consequence of a violation of that parole was not filled out or signed.

Nonetheless, the Supreme Court has held in State v. Johnson, 182 N.J. 232, 864 A.2d 400 (2005) that in order to obtain post-conviction relief as the result of a Freudenberger violation, defendant must also demonstrate that his lack of knowledge of the mandatory parole required by NERA "was material to the decision to plead guilty and prejudiced [him]."  Id. at 241, 864 A.2d 400.

In this case, defendant claimed that he would never have pled guilty if he had been informed of the mandatory periods of parole associated with a NERA sentence, and "[t]hat disclosure of mandatory parole] hurted me more than the sentence, it did." Nonetheless, our review of the plea transcript discloses defendant's willingness to plead guilty, without a sentence recommendation, to a murder that the judge stated could result in a sentence of "life do thirty" and a separate aggravated assault that counsel stated could have resulted in a consecutive maximum extended sentence of twenty years to life.  The eighty-five percent parole disqualifier of NERA was recognized

as applicable to both crimes.  Further, defendant
acknowledged the judge's assertion that:  "Nobody has
made you a promise.  I certainly haven't given you any
reason to believe that you're going to get anything
less than the maximum."  And with this knowledge,
defendant assented when asked whether entering a plea
was "what you want to do."

In light of the fact that defendant entered an
open plea with the understanding that he faced
potential consecutive sentences exceeding a life term,
we agree with the motion judge that knowledge by
defendant that he would receive a five-year period of
parole supervision upon imposition of a lesser,
nineteen-year custodial sentence that was subject to
NERA could not reasonably be found to have materially
influenced defendant's determination to enter an open
plea of guilty to the crimes charged.  As the Court has
held:  "[T]he plea will not be vacated if knowledge of
the consequences would not have made any difference in
the defendant's decision to plead."  Id. at 242, 864
A.2d 400 (quoting State v. Howard, 110 N.J. 113, 123,
539 A.2d 1203 (1988)).  We find such to be the
circumstance here, and therefore affirm the trial
judge's denial of post-conviction relief.

State v. Arthur, 2008 WL 2466541, *3-*4.

Due process requires that guilty pleas be entered
intelligently and voluntarily.  See Boykin v. Alabama, 395 U.S.
238, 242 (1969).  A plea does not qualify as intelligent "unless
a criminal defendant first receives 'real notice of the true
nature of the charge against him, the first and most universally
recognized requirement of due process.'"  Bousley v. United
States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312
U.S. 329, 334 (1941).  Where, prior to pleading guilty, a
defendant is provided with a copy of the indictment which recites
the charge against him, [s]uch circumstances, standing alone,

12

give rise to a presumption that the defendant was informed of the
nature of the charge against him." Id. (citation omitted).  A
guilty plea entered by one fully aware of the direct consequences
of the plea is voluntary "'unless induced by threats (or promises
to discontinue improper harassment), misrepresentation (including
unfulfilled or unfulfillable promises), or perhaps by promises
that are by their nature improper as having no proper
relationship to the prosecutor's business (e.g. bribes).'" Brady
v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v.
United States, 246 F.2d 571, 572 n.2 (5th Cir. 1956) (en banc),
rev'd on confession of error on other grounds, 356 U.S. 26
(1958)).  The Court of Appeals for the Third Circuit has held
that the only direct consequences relevant to evaluating the
voluntariness of a guilty plea are the maximum prison term and
fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d
110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996),
superseded by statute on other grounds as stated in Dickerson v.
Vaughn, 90 F.3d 87 (3d Cir. 1996).

     The Supreme Court, however, has expressly declined to hold
that a prisoner is entitled to habeas relief based solely upon a
court's failure to apprise him, before entry of a guilty plea, of
a term of mandatory parole supervision following incarceration.
See, e.g., United States v. Timmreck, 441 U.S. 780 (1979).  In
Timmreck, a § 2255 proceeding, the prisoner had been advised at

13

the plea hearing that he could receive a sentence of 15 years'
imprisonment, but was not informed of the mandatory three-year
special parole term required by the applicable statute; at
sentencing, the prisoner was sentenced to ten years' imprisonment
followed by a five-year term of special parole.  Rejecting the
motion to vacate the sentence, the Supreme Court held that this
type of violation of Rule 11 of the Federal Rules of Criminal
Procedure was "neither constitutional nor jurisdictional."  441
U.S. at 783.  Instead, habeas relief would be afforded for such
an error only if it results in a "complete miscarriage of
justice" or in a proceeding "inconsistent with the rudimentary
demands of fair procedure."  441 U.S. at 784.  See also United
States v. Cleary, 46 F.3d 307 (3d Cir. 1995) (applying Timmreck
to a similar Rule 11 error).

> To be entitled to habeas corpus relief under
> section 2255, Cleary must show that the Rule 11 error
> amounted to "a fundamental defect which inherently
> result[ed] in a complete miscarriage of justice or an
> omission inconsistent with the rudimentary demands of
> fair procedure."  United States v. DeLuca, 889 F.2d
> 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939,
> 110 S.Ct. 3222, 110 L.Ed.2d 669 (1990).  Not only must
> Cleary demonstrate an error of constitutional
> magnitude, but he also must show that he was prejudiced
> by that error, i.e., that he did not understand the
> consequences of his plea or that, if he had been
> properly advised about the effect of special parole, he
> would not have pled guilty.

46 F.3d at 310-11 (citation omitted).  See also Franklin v.
United States, 872 F.2d 1025, 1989 WL 34085 (6th Cir. 1989)
(where total term of incarceration plus mandatory parole did not

14

exceed term of incarceration promised by government in plea agreement, the error is harmless); Holloway v. United Staes, 960 F.2d 1348 (8th Cir. 1992) (same); United States v. Braziel, 58 F.3d 635, 1995 WL 371014 (5th Cir.), cert. denied, 516 U.S. 953 (1995) (no constitutional violation where unexplained term of special parole plus term of incarceration exceeds by six months maximum potential term of incarceration of which prisoner was apprised at plea hearing).

The decision of the Appellate Division that Petitioner had failed to demonstrate prejudice entitling him to relief--based on the failure to advise him, before entering his guilty plea, that he would be subject to a mandatory term of parole supervision--is neither contrary to nor an unreasonable application of governing federal law, nor is the decision based on an unreasonable determination of the facts in light of the evidence presented to the state court.

Petitioner is not entitled to habeas relief on any of his claims of defects in connection with the entry of his guilty plea.

B.   Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial counsel failed to adequately advise him of the full penal consequences of his guilty plea, in that counsel did not advise him of the mandatory five-year period of parole supervision following his NERA

15

sentence, and that counsel did not ensure that Petitioner got the benefit of his alleged plea agreement.

The Appellate Division rejected Petitioner's claim of ineffective assistance of trial counsel.

> We find no merit, under the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984),[FN1] adopted in New Jersey in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987), in the claim that trial counsel was ineffective in failing to secure the twenty-four-month program that defendant states he was offered by detectives in exchange for providing information regarding the murder allegedly committed by defendant's cellmate, Kevin Cook. After a careful review of the record, we conclude, as we did on appeal from defendant's conviction, State v. Arthur, supra, slip opinion at 14, that defendant's allegations are not credible.

> > [FN1] Strickland requires defendant to show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) counsel's "deficient performance prejudiced the defense." Ibid.

> Our determination is based, in part, on the transcript of the extended and detailed retraxit plea hearing conducted in this matter. Although, there, the trial judge mentioned in passing that there was "some indication that there is some Mitigating Factor Number 12 activity," he then told defendant that his cooperation would not "have an effect on me," but could only change the State's view of the case. Following this statement, the judge elicited from defendant on more than one occasion the concession that no deals with the State had been made. That defendant expected a prison sentence is confirmed toward the conclusion of the hearing when defendant requested an earlier sentencing date so that he could be removed from the county jail and did not contest the judge's assertion that he would be entering "the state system."

16

Almost immediately after entering his retraxit plea of guilty, defendant sought to vacate his plea arguing, improbably, that he was not informed that the State would be seeking an extended term sentence, that he was unaware of his sentencing exposure, that he had not read the plea form and was not informed of its contents, that he was not guilty, and that he only stated that he had stabbed his girlfriend because he had been assured by his attorney that the admission would result in a lighter sentence.  Significantly, defendant did not allege at the time that he had cooperated with the State in connection with the Cook matter, or that he had been promised by anyone that he would receive a twenty-four-month program as a result of that cooperation.

Defendant's allegation that he was promised a program in exchange for his cooperation in the Cook matter first appears in the brief submitted on his behalf on appeal from his conviction and sentence.  ...

As we previously stated, we rejected defendant's argument as incredible and factually unsupported. Despite our skeptical comments, in defendant's later certification in support of his application for post-conviction relief, defendant offers no further details regarding the nature of the deal offered to him or of his resulting cooperation.  Defendant does not identify those persons offering the deal.  He does not explain what the alleged twenty-four-month program entailed or how it could be offered as a sentence on first- and second-degree charges.  Defendant does not specify any facts that he provided regarding the Cook matter, and he does not identify anyone to whom he allegedly spoke. As a consequence, we find defendant's bald assertions to be inadequate to establish a prima facie case of ineffective assistance of counsel, entitling defendant to an evidentiary hearing on that claim.

State v. Arthur, 2008 WL 2466541 at *2-*3 (N.J.Super. App.Div. June 20, 2008).

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.

The right to counsel is "the right to _effective_ assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the

18

facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Strickland two-part standard applies to ineffective-assistance claims arising out of the guilty plea process. Hill v. Lockhart, 474 U.S. 52, 57-9 (1985). In the context of guilty pleas, the first element of the Strickland test remains "nothing more than a restatement of the standard of attorney competence." Hill, 474 U.S. at 58. The "prejudice" requirement, "on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. See also Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir.), cert. denied, 531 U.S. 1003 (2000).

19

The Appellate Division's decision that Petitioner had failed to establish any plea agreement, and thus that he had failed to demonstrate any prejudice from counsel's performance, is neither contrary to nor an unreasonable application of governing federal law.  Similarly, as Petitioner was not able to establish any prejudice flowing from the court's failure to inform him of the mandatory parole supervision term, there was no prejudice flowing from counsel's failure to inform him of the mandatory parole supervision term, either.  Petitioner has made no showing that, but for counsel's alleged errors, he would not have pleaded guilty but would have insisted on going to trial.  Petitioner is not entitled to relief on the claims of ineffective assistance of trial counsel.

### IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

20

to deserve encouragement to proceed further." <u>Miller-El v.</u>
<u>Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of
the denial of a constitutional right.  No certificate of
appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be
denied.  An appropriate order follows.


**  s/ Jerome B. Simandle  **
Jerome B. Simandle
United States District Judge

Dated:  **February 22, 2010**

21